**INDEPENDENT STAVE COMPANY,**
Inc., Petitioner,

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

No. 17810.

United States Court of Appeals
Eighth Circuit.

Nov. 10, 1965.

Rehearing Denied Feb. 8, 1966.

Stephen W. Skrainka, of Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, Mo., made argument for petitioner and filed brief with Sam Elson, St. Louis, Mo., and Robert T. Donnelly, of Donnelly & Donnelly, Lebanon, Mo.

Stephen B. Goldberg, Atty., N. L. R. B., Washington, D. C., made argument for respondent. Arnold Ordman, Gen. Counsel, N. L. R. B., Dominick L. Manoli, Associate Gen. Counsel, N. L. R. B. Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., and Messrs. Glen M. Bendixsen and Herman M. Levy, Attys., N. L. R. B., Washington, D. C., were on the brief.

Before JOHNSEN, VOGEL and MATTHES, Circuit Judges.

VOGEL, Circuit Judge.

Independent Stave Company, Inc., petitioner herein, asks this court to review and set aside an order of the National Labor Relations Board (hereafter Board), respondent, issued on August 25, 1964, following proceedings under § 10 of the National Labor Relations Act (hereafter Act), 29 U.S.C.A. § 151 et seq. The Board, in its answer to the petition, has requested enforcement of its order. The Board's decision and order are reported at 148 N.L.R.B. No. 49. No jurisdictional questions are involved.

The Board, adopting the Examiner's findings, conclusions and recommendations, held that the petitioner violated § 8(a) (1) and (5) [1] of the Act by executing a collective bargaining agreement with Local 42 of the Coopers International Union of North America (hereafter Local 42) after refusing to bargain with the Coopers International Union of North America (hereafter International). Local 42 was affiliated with International.

There was dispute in the evidence offered by the parties and heard by the Examiner. Different versions of what happened on various occasions were presented by the witnesses and inferences that could be drawn therefrom are conflicting. After evaluating the evidence, the Trial Examiner made findings as discussed below.

International was certified by the Board on September 15, 1955, as the representative of petitioner's employees involved herein. There was no subsequent certification of any other labor organization and ever since the certification International has been the duly certified collective bargaining representative of all employees in the unit. Since the cer-

---

1. 29 U.S.C.A. § 158, insofar as it may be pertinent herein, provides:

"(a) It shall be an unfair labor practice for an employer—

"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 [dealing with the employees' right to self-organization and collective bargaining] of this title;

\* \* \* \* \*

"(5) to refuse to bargain collectively with the representatives of his em-

ployees, subject to the provisions of section 159(a) of this title."

Under § 159(a)

"Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: \* \* \*."

tification in 1955 International has negotiated with petitioner about wages, hours and working conditions of employees in the unit. Local 42 has participated in these negotiations.

On June 26, 1963, petitioner met with Local 42 officers and with George Calvert, Fourth Vice President of International, to negotiate a new contract. During that meeting Calvert was the principal spokesman for the employees. Proposals which Calvert and the officers of Local 42 had previously prepared and agreed upon were discussed with petitioner. No agreement was reached at this meeting.

A second bargaining session, at which Calvert and Gene Souders, attorney for International, were principal spokesmen for the employees,. was held on July 11, 1963. James Boswell, petitioner's president, had been present at the meeting of June 26th but did not attend the July 11th meeting. Petitioner was represented at the latter meeting by Robert Donnelly, its attorney. Again discussion was had but no agreement was reached. At the conclusion of the second meeting it was agreed that the parties would meet again the next day but with the understanding that only non-monetary items would be discussed. The reason for this was that Donnelly claimed it would be necessary for him to take some time to consult with Boswell on monetary items and to compute the actual costs of the money items involved in the proposals.

On the morning of the scheduled meeting of July 12th, Local 42 officers met with Calvert and told him that they wanted to negotiate something less in the way of wage increases than had been proposed to petitioner in the earlier meetings. Such proposals had been previously submitted by Local 42 to International and rejected by the latter. After consulting with International's president by telephone, Calvert informed the Local 42 committee that he would not assist them in negotiating Local 42 proposals and that he would not attend the meeting

that morning. He asked that the petitioner be so advised.

The July 12th meeting was thus attended only by representatives of petitioner and by officers of Local 42. Dean Rhoten, president of Local 42, was the principal spokesman for the group. Rhoten told the petitioner's representatives that Calvert would not attend the meeting and that the local group was representing Local 42. Boswell asked where Calvert was and Rhoten advised him that there had been a disagreement between the local and International and that Calvert would not attend. He also added that the petitioner was not dealing with International but with Local 42 and Boswell responded that such an arrangement was "fine with him. * * *"

During the July 12th meeting petitioner made what it described as a "final offer" to the officers of Local 42. This offer covered monetary as well as non-monetary items. Negotiations continued all that day and resumed again on Saturday morning, July 13th. On Monday, July 15th, petitioner by letter gave Local 42 until July 18th to accept or reject its "final offer", which it stated would become "void" if not accepted before then. Attached to the letter was a copy of the offer. Petitioner did not send copies of the letter or the offer to International.

On July 16, 1963, James J. Doyle, President of International, sent the following telegram to James Boswell, petitioner's President, Robert Donnelly, petitioner's attorney, and Dean Rhoten, president of Local 42:

"This is to advise under Sections 34 and 85 of Coopers International Constitution no collective bargaining agreement between Independent Stave and Local 42 can be entered into binding and effective until the terms first approved by majority of International Executive Board."

After Rhoten had received his copy of International's telegram he discussed it with Donnelly. Rhoten testified that Donnelly "suggested that we go ahead and sign the contract because George

Calvert had walked out, thought it would be legal for us to sign a contract, I'll put it that way, because Calvert walked out of the negotiations."

On July 18, 1963, Rhoten and other officers of Local 42 signed a labor contract with petitioner. The contract had been ratified by members of Local 42 on July 16, 1963, by a vote of 74 to 25. A space for Vice President Calvert's signature was included in the document but he at no time has executed his signature thereon.

After the contract had been executed petitioner asked the officers of Local 42 to present it to International. Rhoten presented the agreement to Calvert and to Ernest Higdon, First Vice President of International, on July 21st or July 22nd. This was the first time International officials were aware that a contract had been executed between Local 42 and petitioner. Calvert refused to sign the agreement in the space provided for his signature, saying that it was unacceptable to him but that he would forward it to International.

After receiving the agreement the executive board of International voted to reject it and Doyle, International's President, notified petitioner to that effect. His letter to petitioner is as follows:

"August 1, 1963
"Mr. J. E. Boswell, President
Independence [sic] Stave Company
Lebanon, Missouri
Dear Sir:

"Coopers International Union, AFL-CIO has noted the draft of collective bargaining agreement dated July 18, 1963 proposed for employees of your company. You are advised that Coopers International Union, AFL-CIO rejects the said draft agreement by reason of substandard provisions thereof. The General Executive Board of Coopers International Union has refused to approve the draft agreement and the said draft agreement is null and void and of no binding effect upon Local 42 and Coopers International Union.

"Coopers International Union, AFL-CIO demands that your Company meet with its representatives for the purpose of resumption of negotiating for a collective bargaining agreement covering your employees."

Boswell directed Donnelly to reply to International's request for bargaining. Donnelly did so through the following letter, dated August 6, 1963:

"Mr. James J. Doyle, President
Coopers International Union
120 Boylston Street
Boston 16, Massachusetts

Dear Mr. Doyle:

"We have your letter of August 1, 1963, addressed to Mr. J. E. Boswell, President, Independent Stave Company, Lebanon, Missouri.

"On July 11, 1963, as representative of the Company, I met with Mr. George Calvert of your office, Mr. Gene Souders, his attorney, and with eight representatives of the local union, here at my office. After much discussion concerning a proposed new contract, and at Mr. Calvert's request, it was agreed that we would meet again at 10:00 A.M. the following morning, July 12, 1963, for further negotiations. At 9:15 A.M. on July 12, 1963, I called Mr. Calvert at the Munger Moss Motel here in Lebanon and requested that we meet at the Company offices rather than at my office. This was agreeable with Mr. Calvert. At 10:15 A.M. on July 12, 1963, Mr. Dean Rhoten, President of the Local, appeared with four other men, and sat down with representatives of the Company, including the writer of this letter, at the conference table. The Company was then advised that Mr. Calvert refused to be present and a demand was made upon the Company that it negotiate with those present. Negotiation then proceeded on July 12, 1963, and on subse-

quent occasions, a tentative agreement was reached, was submitted to and approved by the men in the bargaining unit, and was signed on the 18th day of July, 1963.

"The Company considers the actions of Mr. Calvert outlined above a refusal to bargain, and, therefore, an unfair labor practice. Under the circumstances, we regard your demand that bargaining sessions be resumed as completely unreasonable."

The Examiner found that Calvert, in company with International's attorney, Souders, went to the petitioner's office on August 7, 1963, in an attempt to arrange a meeting with Boswell. They were told by petitioner's receptionist that Boswell could not see them that morning. They inquired if Boswell could see them that afternoon and were told that Boswell was busy that afternoon. They then asked if they could come back the following morning but were told that, " * * * Mr. Boswell will not see you at all." There is dispute with reference to the latter occurrence, but the petitioner's receptionist was not called as a witness and the Examiner's findings in connection with the incident are well substantiated in the record.[2]

On or about August 5, 1963, International advised Dean Rhoten by telegram that Local 42 was placed under trusteeship effective immediately and that Vice President Calvert had been appointed trustee to administer the affairs of Local 42. On September 5, 1963, International filed a suit, through George Calvert as trustee of Local 42, in the Circuit Court of Laclede County, Missouri, against Rhoten, asking that the state court issue its decree enjoining and restraining the defendant from withholding from the plaintiff property of Local 42 of any kind or nature in his posses-

sion, custody or control to which plaintiff was entitled by virtue of his office as trustee of Local 42; from retaining or exercising possession, title, custody or control over any property of any kind or nature which is the property of said Local 42; and from interfering with, impeding, precluding or preventing plaintiff from exercising, fulfilling or executing the functions and duties of his office as trustee of said Local 42. Plaintiff asked the court to issue an order requiring the defendant to appear and show cause why a temporary injunction should not be granted. An order to show cause was so issued. A hearing commenced on September 24, 1963. At the conclusion of the hearing the court found the issues for defendant Rhoten and denied the injunction. On September 28, 1963, the petition in the state court suit was dismissed by the plaintiff without prejudice.

On the basis of the evidence referred to, the Trial Examiner concluded, in pertinent part:

"4. At all times since September 15, 1955, [International] has been, and now is, the exclusive representative of the employees in the unit for the purposes of collective bargaining within the meaning of Section 9(a) of the Act.

"5. By refusing on July 18, August 6 and August 7, 1963, and all times thereafter, to bargain collectively with [International] as the exclusive representative of its employees in the appropriate unit, [petitioner] has engaged in and is now engaging in unfair labor practices within the meaning of Section 8(a) (5) and (1) of the Act.

"6. The aforesaid unfair labor practices are unfair labor practices affecting commerce within the

2. As stated by the Trial Examiner:
"* * * Mr. Boswell also testified that the first knowledge he had of Calvert's and Souder's visit to his plant was when charges were filed against the [petitioner] and that he did not tell his receptionist he would ṇọt meet with the

men. The receptionist was not called and no explanation was made of [petitioner's] failure to do so. As stated, I credit Calvert's account."
Clearly the failure by the petitioner to call its own employee lends credence to the position of International.

558

meaning of Section 2(6) and (7) of the Act."

The Board issued the following order:

"Upon the basis of the foregoing findings of fact and conclusions of law, * * * Independent Stave Company, Inc., Lebanon, Missouri, its officers, agents, successors and assigns, shall:

"1. Cease and desist from:

"(a) Refusing to bargain collectively with [International] as the exclusive bargaining representative of its employees constituting the unit herein found to be appropriate for the purposes of collective bargaining.

"(b) Performing or giving effect to its agreement of July 18, 1963, with Local 42 of Coopers International Union of North America, AFL-CIO; provided, however, that nothing herein shall require the [petitioner] to vary or abandon any wage, hour, seniority, or other substantive feature of its relations with its employees which the [petitioner] has established in the performance of this agreement or to prejudice the assertion by the employees of any rights acquired thereunder.

"(c) In any like or related manner, interfering with, restraining, or coercing employees in the exercise of rights guaranteed in Section 7 of the Act, except to the extent that such rights may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized by Section 8(a) (3) of the Act, as modified by the Labor-Management Reporting and Disclosure Act of 1959.

"2. Take the following affirmative action which it is found will effectuate the policies of the Act:

"(a) Upon request bargain collectively with [International] as the exclusive representative of employees in the aforesaid appropriate unit, and if an understanding is reached

embody such understanding in a signed agreement."

The order further required petitioner to post appropriate notices at its plant in Lebanon, Missouri.

The first of two contentions of error raised by petitioner is that:

"I. The Board's Finding That the Employer Failed to Bargain in Good Faith Is Not Supported by Substantial Evidence on the Record as a Whole:

"A. The Record as a Whole Clearly Demonstrates That the International Abandoned Its Status as Exclusive Bargaining Representative and That Local 42 Properly Bargained for the Employees.

"B. The Record as a Whole Clearly Demonstrates That Local 42 Had Both Actual and Apparent Authority to Negotiate an Agreement With the Employer."

■■ After a thorough review of the entire record, we hold that the facts as found by the Examiner are fairly substantiated by the testimony. The Examiner's conclusions drawn therefrom are reasonable and proper. Clearly, this court, even if it were otherwise disposed, may not set aside the findings of the Board and deny enforcement of its orders on a difference of opinion basis. We must be mindful of the Congressional admonition in 29 U.S.C.A. § 160(e) that

"* * * The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive * * *"

and of the manner in which that section has been interpreted. See: N. L. R. B. v. Walton Mfg. Co., 1962, 369 U.S. 404, 405, 82 S.Ct. 853, 7 L.Ed.2d 829; Universal Camera Corp. v. N. L. R. B., 1951, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456; N. L. R. B. v. Arkansas-Louisiana Gas Co., 8 Cir., 1964, 333 F.2d 790, 794–795; N. L. R. B. v. Douglas & Lomason Co., 8 Cir., 1964, 333 F.2d 510, 513.

■ As we have pointed out, International became the certified bargaining representative of this unit of petitioner's employees on September 15, 1955. The record indicates that negotiations for collective bargaining agreements were entered into by the petitioner with representatives of Local 42 and also with the representatives of International. In all prior instances, with the exception of the contract agreement of 1957, the agreements were signed or approved by International. The reasons for International failing to sign the 1957 agreement are not clearly disclosed in the record. However, International acquiesced in the 1957 agreement and accepted its portion of the dues collected pursuant to the contract provisions. It cannot be doubted that since 1955 International has been the Board certified bargaining agent for petitioner's employees as contemplated under 29 U.S.C.A. § 159, set out in f. n. 1, supra. The Supreme Court has left no doubt about the duty to bargain only with the certified representative. This duty is set out in Medo Photo Supply Corp. v. N. L. R. B., 1944, 321 U.S. 678, 683–684, 64 S.Ct. 830, 88 L.Ed. 1007, 1011:

> "The National Labor Relations Act makes it the duty of the employer to bargain collectively with the chosen representatives of his employees. The obligation being exclusive, see § 9(a) of the Act, 29 U.S.C. § 159(a), it exacts 'the negative duty to treat with no other.' Labor Board v. Jones & Laughlin Corp., 301 U.S. 1, 44, [57 S.Ct. 615, 628, 81 L.Ed. 893]; and see Virginian Ry. Co. v. System Federation, 300 U.S. 515, 548–549, [57 S.Ct. 592, 599, 600, 81 L.Ed. 789]. Petitioner, by ignoring the union as the employees' exclusive bargaining representative, by negotiating with its employees concerning wages at a time when wage negotiations with the union were pending, and by inducing its employees to abandon the union by promising them higher wages, violated § 8(1) of the Act, which forbids interference with the right of employees to bargain collectively through representatives of their own choice.

> "That it is a violation of the essential principle of collective bargaining and an infringement of the Act for the employer to disregard the bargaining representative by negotiating with individual employees, whether a majority or a minority, with respect to wages, hours and working conditions was recognized by this Court in J. I. Case Co. v. Labor Board, 321 U.S. 332, [64 S.Ct. 576, 88 L.Ed. 762]; cf. Order of Railroad Telegraphers v. Railway Express Agency, 321 U.S. 342, [64 S.Ct. 582, 88 L.Ed. 788]; see also National Licorice Co. v. Labor Board, 309 U.S. 350, 359–361, [60 S.Ct. 569, 575, 576, 84 L.Ed. 799]. The statute guarantees to all employees the right to bargain collectively through their chosen representatives. *Bargaining carried on by the employer directly with the employees, whether a minority or majority, who have not revoked their designation of a bargaining agent, would be subversive of the mode of collective bargaining which the statute has ordained,* as the Board, the expert body in this field, has found. Such conduct is therefore an interference with the rights guaranteed by § 7 and a violation of § 8(1) of the Act." (Emphasis supplied.)

Petitioner's employees have never revoked the designation of International as their bargaining agent. There has been no decertification.

■ The evidence fully justifies the conclusion that it was petitioner and not International who refused to bargain. The evidence does not fairly justify a conclusion that International "abandoned" its status as exclusive bargaining representative for petitioner's employees nor that, in the eyes of petitioner, Local 42 had either actual or apparent authority to negotiate any binding agreement. The petitioner, recognizing International's status as the sole bargaining agent,

called Calvert on the morning of July 12, 1963, to notify him of a change in the meeting place for the scheduled negotiating session, which session, as pointed out earlier, Calvert did not attend. Officers of Local 42, on the other hand, were not personally notified of the change by petitioner. Petitioner was well aware of the disagreement over wage demands between Calvert and Local 42 as being the reason why Calvert did not attend the July 12th meeting, which, incidentally, was originally scheduled to deal only with non-monetary matters. Petitioner also ignored Doyle's telegram of July 16th calling attention to the fact that no binding agreement could be made with Local 42 unless or until the terms of such agreement were first approved by International. In spite of the warning, petitioner, two days later on July 18th, entered into the agreement now in question. Petitioner asked that the officers of Local 42 forward a copy thereof to International. The fact that the agreement contained a place for Calvert's signature is an indication that petitioner realized International had not abandoned its status as bargaining agent for petitioner's employees. Petitioner's attitude in this matter is further evidenced by its refusal to speak with the officers and representatives of International who visited petitioner's plant on August 7, 1963. The Examiner was thoroughly justified in concluding that petitioner was refusing to bargain with the proper certified bargaining representative and therefore was in violation of the Act.

The situation here is much like that found in Quaker State Oil Refining Corp. v. N. L. R. B., 3 Cir., 1959, 270 F.2d 40, certiorari denied, 361 U.S. 917, 80 S.Ct. 261, 4 L.Ed.2d 185. There the employer attempted to obtain a working arrangement directly with the local union, thus by-passing the Oil Workers International Union, which was the certified bargaining agent. The company had sent to its employees a letter which proposed a higher wage increase than that previously negotiated with the national union and which urged the employees to sign the agreement without the national union's approval. The court held that it was the clear duty of the employer to bargain with the certified representatives of the employees exclusively and that its failure to do so was a violation of § 8(a) (1) and (5) of the Act. After passing on other matters involved in that case, the court said at page 46 of 270 F.2d:

"The company characterizes its conduct as trying to help the employees who signed the petitions to get the [proposed] contract signed. It excuses its letter by saying that it endeavored to have the employees first try to have the International Union sign the agreement and if they could not accomplish this, to have the local union officials sign it.

"There is sufficient in the proofs to substantiate the charge. *It is clearly the duty of the employer under Section 8(a) (5), (1) of the Act to bargain collectively with the chosen representative of the employees exclusively.* Medo Photo Supply Corp. v. N. L. R. B., 1944, 321 U.S. 678, 683–684, 64 S.Ct. 830, 88 L.Ed. 1007. The Board considered the company's representations that its only purpose was to dispose of the wage dispute and thus avoid any reason to strike. It refused to accept them because, since the employees had not repudiated their representative, differences with the latter must be handled intra-union not through the employer. *While the relationship of the local union with its bargaining representative was not satisfactory, the company had no right to interfere with it as it did. In so doing it violated the Act.*" (Emphasis supplied.)

In the same manner the petitioner in the instant case interfered in the dispute between Local 42 and International, the certified bargaining agent, and it violated the Act in so doing.

Petitioner would attempt to draw support from the provisions of Section

85 of International's constitution which provides in part:

"Each local union shall have autonomy over its own affairs and shall make their own contracts governing the hours of labor, working conditions, and scale of wages to be paid in their class of work and in the use of the union label, *subject to the approval of the general executive board,* but under no circumstances shall the general executive board approve of a contract nor a local union sign a contract which is not approved by the general executive board that calls for a lower scale of wages or poorer working conditions than are received by other locals or locals in the vicinity or part of the country doing the same work.

\* \* \* \* \* \*. \*

"Local unions shall retain their right to negotiate their own contracts as heretofore, unless they deem otherwise, and if they so desire they may request the assistance of any member of the general executive board during contract negotiations, *provided, however, that the local unions' contract proposals have been approved by the general executive board."* (Emphasis supplied.)

The petitioner interprets the foregoing as giving " \* \* \* the Local actual authority to negotiate an agreement with the Company". This is a misinterpretation. The italicized portions of the paragraphs relied on indicate clearly that the approval of the general executive board of International is an essential prerequisite to a final contract. Here petitioner knew that there was a dispute between Local 42 and International and, as pointed out in the Quaker State Oil Refining Corp. case, supra, an employer may not ignore these differences to the complete disregard of the certified bargaining agent. As indicated by the record and as known to petitioner, there was a long history of differing opinions between International and Local 42. In spite of this, petitioner's employees had not effected any decertifi-

cation of International as their bargaining agent. If petitioner had in good faith believed that International failed to negotiate, its proper course of action would have been to file charges before the Board, rather than to have signed an illegal contract with Local 42 alone. See N. L. R. B. v. Plumbers Union, etc., 2 Cir., 1962, 299 F.2d 497, 501, and cases cited therein.

Petitioner's second contention of error is that:

"II. The Board Erred in Failing to Admit Into Evidence and to Consider (1) the State Court Decision That the Local Had Authority to Negotiate, (2) the State Court Transcript, and (3) the Admission of the International That the Local Was the Collective Bargaining Representative of the Company's Employees." ·

The state court action referred to was that mentioned earlier which was brought by George Calvert as trustee of Local 42 against Dean Rhoten in the Circuit Court of the County of Laclede, State of Missouri.

■ We think no error was committed in the rejection. § 10(a) of the Act, 29 U.S.C.A. § 160, provides in part:

"The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 158 of this title) affecting commerce. *This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise:* \* \* \*." (Emphasis supplied.)

See, N. L. R. B. v. Supreme Dyeing & Finishing Corp., 1 Cir., 1965, 340 F.2d 493, 494, f. n. 1 (ignoring of prior determination by Rhode Island Department of Employment Security); N. L. R. B. v. Pacific Intermountain Express Co., 8 Cir., 1955, 228 F.2d 170, 176, certiorari denied, 351 U.S. 952, 76 S.Ct. 850, 100 L.Ed. 1476 (refusal to reopen record to show subsequent decision of state tribunal); N. L. R. B. v. Bell Aircraft

Corp., 2 Cir., 1953, 206 F.2d 235, 237 (ignoring of prior arbitrator's award); N. L. R. B. v. Monsanto Chemical Co., 8 Cir., 1953, 205 F.2d 763, 764 (waiving by N. L. R. B. of its own procedural rules to obtain statutory jurisdiction of dispute); N. L. R. B. v. International Union, etc., 7 Cir., 1952, 194 F.2d 698, 702 (ignoring of prior action before a Wisconsin state agency); N. L. R. B. v. Walt Disney Productions, 9 Cir., 1944, 146 F.2d 44, 48, certiorari denied, 324 U.S. 877, 65 S.Ct. 1025, 89 L.Ed. 1429 (arbitration policy of federal N.W.L.B. not binding on N. L. R. B.). Although there is no apparent authority for the proposition, it would logically follow that if the Board has exclusive jurisdiction where unfair labor practices are involved, it could ignore what transpired at another proceeding, such as the state court hearing herein involved, as well as the result of such other proceeding. It is also possible, however, that the state court transcript was actually viewed by the Board, since the Board received it in the rejected exhibit file and since it had to review the Trial Examiner's evidentiary rulings.

Even if there were some conceivable basis for the admission of the state court transcript for use in impeaching witnesses, etc.,[3] there was no prejudicial error to petitioner here. For one thing, the evidence against petitioner, as we have pointed out, was substantial even if we assume part of it would have been discredited by the admission of the state court transcript. See, Bituminous Material & Supply Co. v. N. L. R. B., 8 Cir., 1960, 281 F.2d 365, 369. Further, as pointed out by respondent, to the extent that the state court transcript showed that Inernational had approved of what it viewed as sub-standard contracts between other locals and other employers, it is immaterial in light of the evidence herein that International had warned petitioner that it would not honor an agreement between petitioner and Local 42.

While International's letter of August 1, 1963, to petitioner took the position that the agreement of July 18, 1963, was "null and void", the Board saw fit to allow the relations with employees which had been established under the agreement and the rights which employees had acquired thereunder to stand. In ordering petitioner to cease and desist from performing or giving effect to the agreement and to engage in bargaining with International upon request, the Board added, as noted above, the following qualification or proviso:

" * * * provided, however, that nothing herein shall require the [petitioner] to vary or abandon any wage, hour, seniority, or other substantive feature of its relations with its employees which the [petitioner] has established in the performance of this agreement or to prejudice the assertion by the employees of any rights acquired thereunder".

The effect of this would seem to be that petitioner was required to bargain with International only as to conditions projectively, or from the date of the Board's order, and not retrospectively or in attempted reach backward at anything which had gone before.

In summary, then, we hold that International did not abdicate its power as the certified bargaining agent of the employees, nor did it give to Local 42 power to enter into a contract without its approval. We accordingly direct that an order be entered enforcing the Board's proposed order, but in doing so we make clear what is implicit in the order; i. e., that such order be prospective only, with no retrospective aspects. This means, of course, that International can at any time reopen the negotiations with petitioner notwithstanding the present existing agreement between petitioner and Local 42.

The Board's order will be enforced as interpreted.

3. Cf., N. L. R. B. v. Dewey Portland Cement Co., etc., 10 Cir., 1964, 336 F.2d 117, 119–120; N. L. R. B. v. Burns, 8 Cir., 1953, 207 F.2d 434, 436–437.