**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**v.**

**The COACHMAN'S INN, Respondent.**

**No. 18003.**

United States Court of Appeals
Eighth Circuit.

March 3, 1966.

William J. Avrutis, Atty., N. L. R. B., Washington, D. C., Arnold Ordman, Gen. Counsel, NLRB, Washington, D. C., Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Glen M. Bendixsen, Atty., N. L. R. B., Washington, D. C., for petitioner.

C. J. Lincoln, of House, Holmes & Jewell, Little Rock, Ark., Robert B. Hill, of House, Holmes & Jewell, Little Rock, Ark., for respondent.

Before VAN OOSTERHOUT and MEHAFFY, Circuit Judges, and VAN PELT, District Judge.

VAN PELT, District Judge.

The case is before the court upon the petition of the National Labor Relations Board, hereafter called Board, for enforcement of its order of June 5, 1964, pursuant to § 10(e) of the National Labor Relations Act, 29 U.S.C.A. § 160. The decision and order of the Board are reported at 147 N.L.R.B. No. 278.

The Board in adopting the Trial Examiner's findings and conclusions held that the respondent, an Arkansas corporation which operates a motel-restaurant serving transient guests, was in violation of 29 U.S.C.A. § 158 [§§ 8(a) (1), 8(a) (3), and 8(a) (5) of the Act] in these particular respects:

1) Interrogated employees concerning their intentions to vote and union activities;

2) Promised economic benefits if they refrained from supporting the union in the election;

3) Threatened the employees with economic and other reprisals if they voted for the union;

4) Fired one man, a Mr. Solomon D. Hopes, for union activities; and

5) Practiced intimidating and coercive conduct at a bargaining session.

Respondent was ordered to cease and desist from the alleged unfair labor practices; to post appropriate notices; to bargain collectively with the majority representative of its employees; and to reinstate Mr. Hopes with back pay and interest without prejudice to his seniority rights and other privileges.

The petition for enforcement of the Board's order does not presently apply to the violation of § 8(a) (3), concerning Mr. Hopes, as that portion has been settled and is thus not pertinent to the issues raised here. Despite the settlement, reference is made to Hopes' testimony in the Board's brief. However, such testimony will not be discussed as the enforcement requested does not stand or fall on its use.

The events leading to the controversy show that the Board on March 18, 1960 had certified the union, officially known as Hotel-Motel, Restaurant Employees Union, Local 200, Hotel and Restaurant Employees and Bartenders Union, AFL-CIO, as bargaining representative of the Coachman's Inn motel employees. On May 25, 1960, respondent and the union entered into a three-year contract expiring May 31, 1963. This latter date was also the date designated in the Spring of 1963 for an election after an assistant to the assistant manager of the respondent had filed a petition for a decertification election alleging that the union was no longer the employees' bargaining representative. The union won this election.

Events occurring prior to the election are the basis for the charges involved in this case. Specifically the charges, so far as now material, concern the action of Vance Thompson, Coachman's president, and conversations with three employees, to-wit: Donald Frazier, a porter; Lawrence Tippen, a bus boy; and George T. Brown, a cook.

The issue for this court's determination is whether the testimony offered by the three employees and the evidence as to Thompson's activities are sufficient to sustain the Examiner's findings, which were adopted by the Board, that respondent was in violation of §§ 8(a)(1) and 8(a)(5) of the Act. Examination of the testimony is requisite in such a determination.

Donald Frazier testified as to conversations with different supervisory personnel

of Coachman's about the election and to his discharge under conditions which, if Frazier is believed, were the result of his vote for the union at the election. His testimony, which will not be set forth, was denied by five Coachman witnesses. However, two of Coachman's witnesses conceded that Frazier had been told that if he voted for the company, "it would be appreciated." In Coachman's brief, Frazier's testimony is dismissed with the statement that the "conversations were a product of Frazier's imagination."

Lawrence Tippen testified that the day before the election he had a conversation with the dining room hostess who was seated at a table with the Coachman manager. The hostess asked him how he was going to vote and in response he stated that it was a secret and he would tell her after he had voted and when "it was over." Tippen testified that the Coachman manager said nothing during this conversation. Tippen's testimony was undenied.

George T. Brown, a union committeeman who attended the bargaining sessions with the company, testified as to a meeting around April 1, 1963 in "The Coach Room", at which five persons, whom he named, were present for the union. Vance Thompson, the Company's president and a stockholder, came in and "asked for the floor, and it was given to him."

"* * * He asked me what was my name, and he asked me if I was satisfied with my salary, and I said, 'Yes'. He went on down the line and asked the rest of the committeemen was they satisfied with their jobs.

"Trial Examiner: What did they say?

"The Witness: 'Yes'.

"Trial Examiner: Was anything else said by him or by anybody else?

"The Witness: No."

Other employees testified similarly although not in identical language as to the questions asked of them and others by Thompson at this meeting. Thompson did not testify and the testimony concerning his activity at this meeting was not denied by other witnesses called by Coachman.

This conduct of Vance Thompson the Examiner found "in effect constituting intimidating conduct by him" and that

"12. Respondent has violated Section 8(a)(5) and (1) of the Act by the intimidating and coercive conduct of its president Vance Thompson at a bargaining session held between Respondent and the Union on May 1, 1963 hereinabove more specifically set forth."

Brown also related a conversation with two of Coachman's managing personnel on May 27th in "the Coach kitchen" as follows:

"Well, Mr. Davis asked me how did I like the broiler, and I said 'Okay'. He said they were trying to make everything convenient for the employees. Then, he told me he wanted to talk with me the next week, and I told him I wouldn't be there because I would be on vacation. Then, Mr. Barrentine said, 'George is just about as hard to keep pleased with getting raises as Hopes is to keep dead'."

Brown also testified that on Thursday or Friday before the election, James Williams talked to him in the Coach Room:

"He came in and he told me—I knew that the chef had mentioned that I could get another job, and I knew that I could handle the kitchen employees, and he kept talking. He asked me what I wanted, and I pretended I didn't know what I was talking about. He hollered, 'You know what you want,' and I said, 'Raise in salary'. He said, 'Well, I'll have to make a phone call and I'll call you tomorrow night and let you know about it.' The next day he called and said everything was okay, and he talked to me when I got to work. That afternoon I got to work and he spoke to me, and we haven't talked any more.

"Q. (By Mr. Wise) He hasn't said anything else to you about this? A. No.

"Q. Is that all of the conversation concerning the raise in salary? A. Yes.

\* \* \* \* \* \*

"Trial Examiner: Did you get your raise?

"The Witness: No."

Williams denied any such conversation with Brown. Wayne Barrentine and Harold Davis testified for Coachman and denied Frazier's testimony. Neither of them was asked about the May 27th conversation with Brown.

The evidence is in part conflicting, as pointed out above. The Examiner and the Board chose not to give credence to Coachman's witnesses and to believe the employees. Clearly, the disputed testimony, if the employees are believed, when taken with the undisputed conversations, is sufficient to affirm the Board's findings.

██ This court has consistently adhered to the view so well expressed in an opinion by Judge Ridge writing for a panel composed of Judges Johnsen, Matthes and Ridge, saying:

"We need not differentiate the rulings made in such cited authority. It is deemed sufficient to say that the rule laid down in Universal Camera Corporation v. National Labor Relations Board, infra, [340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456] does not require that we 'displace the Board's choice between two fairly conflicting views, (of the evidence) even though (we) would justifiably have made a different choice (of inferences) had the matter been before (us) *de novo.*' (340 U.S. l. c. 488, 71 S.Ct., l. c. 465). The *Universal Camera* opinion recognizes that as a reviewing court we should set aside decisions of the N.L.R.B. only when we 'cannot conscientiously find that the evidence supporting (the) decision is substantial, when viewed in the light (of) the record in its entirety \* \* \*,

including the body of evidence opposed to the Board's view.' (l. c. 488, 71 S.Ct., l. c. 465, supra.)" National Labor Relations Board v. Morrison Cafeteria Co., 8 Cir. 1963, 311 F.2d 534, 536.

Recently, and since this case was submitted, Chief Judge Vogel, writing for a panel composed of Judges Johnsen, Matthes and Vogel, has said:

"Clearly, this court, even if it were otherwise disposed, may not set aside the findings of the Board and deny enforcement of its orders on a difference of opinion basis. We must be mindful of the Congressional admonition in 29 U.S.C.A. § 160(e) that

'\* \* \* The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive \* \* \*'

and of the manner in which that section has been interpreted. See: N.L.R.B. v. Walton Mfg. Co., 1962, 369 U.S. 404, 405, 82 S.Ct. 853, 7 L.Ed.2d 829; Universal Camera Corp. v. N.L.R.B., 1951, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456; N.L.R.B. v. Arkansas-Louisiana Gas Co., 8 Cir., 1964, 333 F.2d 790, 794–795; N.L.R.B. v. Douglas & Lomason Co., 8 Cir., 1964, 333 F.2d 510, 513." Independent Stave Co. v. N.L.R.B., 8 Cir. 1965, 352 F.2d 553, 558.

See also N.L.R.B. v. Ritchie Manufacturing Co., 8 Cir., 354 F.2d 90, which, in quoting the above statement from the Stave case, says it "sets out the oft-stated standard for judicial review of the findings of fact of the Board."

In N.L.R.B. v. Melrose Processing Co., 8 Cir., 351 F.2d 693, also decided since this case was submitted, this court stated that if the factual conclusion of the Board is based upon substantial evidence on the whole record, this court must accept such factual determination as binding. Jas. H. Matthews & Co. v. N.L.R.B., 8 Cir., 354 F.2d 432, decided December 29, 1965, adheres to these principles.

We therefore conclude as did the court in the *Matthews* case

"In light of the foregoing, the rulings and order of the Board are in all respects entitled to enforcement. A decree will be entered so ordering."

The order of the Board of June 5, 1964 is approved and its enforcement will be ordered.